# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>**Plaintiff,**<br><br>vs.<br><br>DANIEL WILDMAN,<br>**Defendant.** | ‖ | Case No. 13-MJ-223<br><br>**ORDER FOR PRETRIAL<br>DETENTION** |

On the 13th day of August, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial.[1] The Government was represented by Assistant United States Attorney Anthony Morfitt. The Defendant appeared personally and was represented by his attorney, Jill M. Johnston.

## I. RELEVANT FACTS AND PROCEEDINGS

On July 26, 2013, Defendant Daniel Wildman was charged by Criminal Complaint (docket number 2) with being a prohibited person in possession of a firearm.

At the hearing, ATF Agent Timothy Hunt testified regarding the circumstances underlying the instant charge. On October 16, 2012, at approximately 6:50 a.m., Calmar Police responded to a report of shots fired outside at an apartment. At the scene officers found a discharged shotgun hull. Three witnesses — David Cheney, Andrew Mossman, and Corey Newmandall — identified Defendant as the shooter. In a later interview, Cheney told law enforcement that earlier in the morning on October 16, he went to Defendant's residence, an RV trailer located on a farm, and demanded money from

---

[1] Defendant waived his right to a hearing at the initial appearance, while reserving his right to ask for a hearing on a later date.

Defendant. Cheney left and Defendant pursued him and others with Cheney. Defendant called Cheney multiple times to find his location, and fired shots at Cheney, Mossman, and Newmandall outside Cheney's apartment.

Officers went to the farm where Defendant was living in an RV. Officers saw a four-wheel all-terrain vehicle ("ATV") leave an out-building on the farm, and pursued it until the ATV became disabled. Defendant then fled on foot before being caught by officers. A search warrant was obtained for the out-building, RV, and Defendant's vehicle.[2] Officers found a 12-gauge shotgun, a rifle, and ammunition in the out-building. Officers also found spent shotgun hulls and a .22 caliber rifle in Defendant's vehicle. Ammunition was also found in the coat that Defendant was wearing.

Defendant was interviewed by law enforcement, and admitted being a regular user of marijuana. A urine sample was taken, and tested positive for marijuana and Oxycodone. Initially, Defendant denied everything, but later admitted shooting a shotgun at Cheney, Mossman, and Newmandall in order to "scare them."

According to the pretrial services report, Defendant is 24 years old. He was born in Cresco, Iowa, and has lived most of his life in Cresco. Defendant's father is deceased and his mother and one sibling live in Bloomington, Minnesota. He has another sibling who lives in Cresco. At the hearing, Defendant's counsel stated that if released, Defendant's brother was willing to allow Defendant to reside with him in Cresco.[3] Since October 16, 2012, Defendant has been held in Winneshiek County Jail on state charges arising from this incident.[4] Defendant has never been married, but has two children from

---

[2] The RV Defendant was living in was parked inside an out-building on the farm.

[3] According to the pretrial services report, however, Defendant's brother indicated that Defendant was not welcome to stay with him. Defendant's mother also told the pretrial services officer that she did not have "room" for Defendant to live with her.

[4] The state charges were dismissed 3 days after the federal Complaint was filed.

separate relationships. Both children reside with their respective mothers in northeast Iowa.

Defendant is currently unemployed. He last worked in the summer of 2012 as a farm hand at Breitsprecher Livestock in Ossian, Iowa.[5] Defendant is in good physical health. He has been treated for ADHD since age 10, and is prescribed medication for his condition. Prior to his arrest in October 2012, Defendant told the pretrial services officer that he used marijuana on a daily basis, and was a regular user of Oxycodone.

Turning to his criminal record, on August 3, 2004, at age 15, Defendant was charged and later convicted of third degree burglary. He was given probation. His probation was discharged in December 2005.

On August 24, 2007, at age 18, Defendant was charged with third degree theft. Four days later on August 28, Defendant was charged in three separate cases with third degree burglary of an unoccupied vehicle, a controlled substance violation, and third degree theft. On June 23, 2008, Defendant was convicted of the controlled substance violation. He was given a deferred judgment and 2-5 years probation. Both third degree theft charges and the burglary-3rd charge were dismissed at that time.

On April 30, 2008, while multiple charges were pending, Defendant was charged and later convicted of fifth degree theft. On August 4, 2008, while on probation on the drug charge, Defendant was charged and later convicted of fifth degree criminal mischief. On October 4, 2008, while on probation, Defendant was charged and later convicted of third degree criminal mischief. On October 30, 2008, while charges were pending and while on probation, Defendant was charged with escape of a felon. That charge was ultimately dismissed. On November 10, 2008, while charges were pending and while on

---

[5] Shawn Breitsprecher told the pretrial services officer that Defendant was hired on a "short-term" basis to do chores around the farm.

probation, Defendant was charged with false report to law enforcement. That charge was also ultimately dismissed.

On November 24, 2008, five months after getting a deferred judgment in the drug case, Defendant's deferred judgment was revoked. He was given a 5-year suspended prison sentence, 5 years probation, and 1 year in a residential facility. On May 3, 2010, Defendant was found in violation of his probation and sentenced to 14 days in jail. His probation was discharged on June 24, 2013.[6]

On May 4, 2009, while on probation, Defendant was charged with domestic abuse assault. That charge was later dismissed. On February 17, 2010, while on probation, Defendant was charged and later convicted of driving while barred. On June 28, 2010, while on probation, Defendant was charged and later convicted of interference with official acts.

On November 15, 2010, while on probation and while charges were pending, Defendant was charged with dominion/control of a firearm by a felon.[7] On December 20, 2011, while on probation and while charges were pending, Defendant was again charged with dominion/control of a firearm by a felon. This charge has been dismissed. On October 16, 2012, while on probation and while charges were pending, Defendant was charged with three counts of attempted murder, intimidation with a dangerous weapon, and dominion/control of a firearm by a felon. These charges stem from the events giving rise to the instant federal charge. All charges were dismissed three days after the instant federal complaint was filed. Finally, on October 23, 2012, while on probation and while

---

[6] According to the pretrial services report, between October 9, 2008, and October 26, 2012, ten reports of probation violations were filed against Defendant. The violations included: six arrests, failure to maintain employment (fired from three jobs), failure to show up for probation office appointments, failure to abstain from alcohol use, traveling outside the state of Iowa without permission, testing positive for marijuana use, and admitting marijuana use on multiple occasions.

[7] At the hearing, Defendant's counsel represented that this charge will be dismissed.

charges were pending, Defendant was charged with a controlled substance violation.[8] This charge has also been dismissed.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

---

[8] The circumstances surrounding this charge allegedly occurred on February 3, 2012.

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

## B. Analysis

Turning to the facts in the instant action, Defendant is charged with being a prohibited person in possession of a firearm. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(E).

Regarding the second step, the weight of the evidence against Defendant is strong. Three witnesses will testify that Defendant shot a shotgun at them in the early morning hours of October 16, 2012. Defendant admitted to law enforcement officers that he shot the shotgun at the three witnesses. Law enforcement also found firearms in an out-building where Defendant was residing. Additionally, spent shotgun hulls were found in Defendant's vehicle on the day of the shooting.

A prohibited person in possession of a firearm constitutes a danger to the community, particularly when that person uses the firearm and shoots it at three individuals. Furthermore, prior to his incarceration on state charges, Defendant admitted to daily marijuana use and routine use of Oxycodone. Evidence shows that Defendant was using both of these drugs at the time of the events giving rise to the instant federal charge. Moreover, Defendant was also on probation at the time of these events. Defendant lacks a stable residence and stable employment. Defendant has also consistently demonstrated an inability to comply with the requirements of probation, including a history of multiple arrests, failure to maintain employment, failure to show up for probation office appointments, failure to abstain from alcohol use, traveling outside the state of Iowa without permission, testing positive for marijuana use, and admitting marijuana use on multiple occasions. In fact, a warrant was outstanding for Defendant's arrest due to probation violations at the time of these events on October 16, 2012. Based on all the facts and circumstances, the Court has no confidence that Defendant would comply with the terms and conditions it would impose if he were released, to assure his appearance in court, or assure the safety of the community. Accordingly, based on the serious nature and events underlying the offense, and Defendant's significant history of failing to comply with the requirements of probation, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

## III. ORDER

IT IS THEREFORE ORDERED as follows:

1.      The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2.      The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3.      On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

DATED this 13th day of August, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA